**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-10292-ADB |
| | ) | |
| STEPHEN M. DeBERARDINIS, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE**

The United States of America respectfully opposes Defendant Stephen DeBerardinis'

Motion for Compassionate Release (ECF No. 191). Defendant's Motion is procedurally defective

because he has not shown that he has exhausted his administrative remedies and this Court could

deny Defendant's Motion on that basis alone. Even if this Court reaches the merits of Defendant's

claim, Defendant's Motion should be denied because he has not provided any extraordinary or

compelling reasons warranting a reduction in his sentence. In addition, DeBerardinis is a danger

to the community, and pursuant to the sentencing factors under 18 U.S.C. § 3553(a), there is

absolutely no basis for this Court to reduce the defendant's within-guidelines sentence. The Court

should deny his Motion.

**DEFENDANT'S CONVICTIONS AND CRIMINAL HISTORY**

DeBerardinis was convicted of sending horrific and racially offensive Facebook messages

to an interracial couple over Facebook on January 6, 2021, harassing and threatening them. And

when the victim told the defendant that they were going to report him to law enforcement, he

obstructed justice. The defendant sent the victims a picture of brass knuckles with "SNITCHES

1

GET STITCHES" written around it, telling the victims, inter alia, that he "burn[s] n_____ alive."[1] The defendant also threatened to rape, kill and dismember a victim, and made other vile and violent threats to both of them. See PSR ¶¶ 8-17a. One of the victims spoke at the defendant's sentencing about the substantial impact the defendant's crimes had on her and her family. She told the defendant, "You made everyday safety in our lives a new concern we had never been faced with before because I never knew if the hatred in your heart or threats were going to become my reality." ECF No. 175 at 14:9-12.

For these crimes, this Court sentenced DeBerardinis to 90 months in prison. ECF No. 180. This sentence was within what the Court determined to be DeBerardinis's guideline sentencing range of 84-105 months. *See* ECF No. 175 (transcript of June 10, 2024 sentencing hearing) at 5-6, 26-28. The defendant's criminal record placed him in Criminal History Category VI. PSR ¶ 45, 76-78; ECF No. 175 at 5-6.

Unfortunately, the criminal behavior the defendant exhibited in this case was not new for him. His criminal history is lengthy and atrocious. As this Court previously wrote, "DeBerardinis has a lengthy and serious criminal record that 'spans over two decades and has over 100 hundred entries and more than 30 convictions in at least 15 different courts,' and includes many violent offenses." ECF No. 51 at 6 (quoting, in part, a decision of M.J. Bowler). Indeed, the defendant's criminal convictions involving violence include six convictions for violating the Abuse Prevention Act, two convictions for disorderly conduct, and convictions for arson, bomb hoax, stalking/following, and threatening violence. Magistrate Judge Bowler noted that "[h]is proclivity for violent behavior has resulted in 13 restraining orders including two lifetime orders." ECF No. 45 at 5. Magistrate Judge Bowler stated that she did not think she had ever seen a person with that

---

[1]     The defendant wrote out the full n-word in this and other messages he sent to the victims.

many restraining orders before. ECF No. 26 at 22. One of the restraining orders on the defendant's record was obtained by his mother, Shirley DeBerardinis. PSR ¶ 110. Moreover, the defendant repeatedly violated restraining orders, resulting in at least five criminal convictions. See ECF No. 51 at 6; PSR ¶¶ 47, 61, 62, 68, 73, and 75. One individual testified in state court that the defendant once defied a restraining order by coming to her house with a gun, and on a separate occasion the defendant told this individual and one of his very close female relatives that they should be gang-raped and should kill themselves. *See* ECF No. 49-5.

## LEGAL STANDARD FOR COMPASSIONATE RELEASE

Generally, a federal district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The compassionate release statute, 18 U.S.C. § 3852(c)(1)(A), provides a narrow exception to this rule. 18 U.S.C. § 3582(c)(1)–(2). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

3

The defendant bears the burden of establishing: (1) he has "fully exhausted all administrative rights to appeal"; (2) his reasons are "extraordinary and compelling" within the meaning of the statute; and (3) such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Galiany-Cruz*, No. 22-1196, 2023 WL 6458535, at *1 (1st Cir. June 6, 2023), *cert. denied*, 144 S. Ct. 370 (2023) (movant bears the burden of establishing extraordinary circumstances) (cleaned up). A district court may grant a compassionate release motion only if it finds that the movant satisfies each and every step. *United States v. D'Angelo*, 110 F.4th 42 (1st Cir. 2024) (*quoting* 18 U.S.C. § 3852(c)(1)(A)). "And it must deny the motion if that movant fails at any step." *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (cleaned up).

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

Prior to November 2023, the relevant policy statement, U.S.S.G. § 1B1.13, did not apply to prisoner-initiated motions for compassionate release. Effective November 1, 2023, the Sentencing Commission adopted an amendment making its policy statement applicable to motions for compassionate release "of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. 1B1.13 (as Amended Nov. 1 2023; emphasis added). The Sentencing Commissions' relevant policy statement now provides (in pertinent part) that:

> Upon motion of the defendant … the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—extraordinary and compelling reasons warrant the

reduction; … the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement.

In the Guidelines, § 1B1.13, the Commission identified the "extraordinary and compelling reasons" that may justify compassionate release. The Guideline provides, in pertinent part,[2] as follows:

(b) Extraordinary and Compelling Reasons.— Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1)    Medical Circumstances of the Defendant

(2)    Age of the Defendant

(3)    Family Circumstances of the Defendant –

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)    Victim of Abuse

---

[2]    Defendant makes no allegations that he relies upon a medical condition, his age, any claim of abuse, or unusually long sentence. As such the details of those sections of the policy statement, subsections (1), (2), (4), and (6) are omitted.

5

(5)    Other Reasons.—The defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4).

(6)    Unusually Long Sentence

In general, the defendant has the burden to show circumstances that meet the test for compassionate release. *See, e.g., United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted); *see also United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024), cert. granted in part, No. 24-556, 2025 WL 1496486 (U.S. May 27, 2025) ("[A]n 'extraordinary' reason is most unusual, far from common, and has little or no precedent, beyond or out of the common order, remarkable, and synonymous with 'singular.' A 'compelling' reason is both powerful and convincing.") (cleaned up).

## ARGUMENT

This defendant fails to demonstrate that he meets any of the requirements for obtaining compassionate release. As a threshold matter, he did not show that he exhausted his administrative remedies, thus his motion should be denied on that basis alone. Even if defendant had exhausted his administrative remedies, he does not – and cannot – meet any of the other three requirements under the law: he does not have extraordinary or compelling circumstances that warrant a reduction; he remains a danger to the community; and the sentencing factors under 18 U.S.C. § 3553(a) do not warrant compassionate release. In order to reduce a defendant's sentence, this Court

must find that the defendant meets all four of these requirements. Because this defendant has met none, his Motion must be denied.

## I.    DeBerardinis Failed to Show that He Exhausted His Administrative Remedies.

Defendant's Motion is doomed from the start because he has not shown he exhausted administrative remedies. Prior to filing a motion requesting a reduction in his sentence, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [allow] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The First Circuit has held that "this exhaustion requirement is not a jurisdictional limitation: as several circuits previously have held, it is a non-jurisdictional claim-processing rule." *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022). Although not a jurisdictional requirement, "the requirement is generally mandatory unless waived or conceded by the Government." *United States v. Mujo*, No. 1:15-CR-00072-SDN-2, 2025 WL 1793310, at *2 (D. Me. June 30, 2025) (cleaned up), report and recommendation adopted, No. 1:15-CR-00072-SDN-2, 2025 WL 2144859 (D. Me. July 29, 2025). DeBerardinis failed to provide any evidence to show that he requested compassionate release from the warden of his facility. This failure requires a finding that the defendant did not properly exhaust his administrative remedies. DeBerardinis's Motion could be denied on that basis alone.

## II.    The Defendant Has Failed to Provide Extraordinary or Compelling Reasons Warranting Compassionate Relief.

### A.    Defendant's Family Circumstances Do Not Warrant a Sentence Reduction.

Since his September 29, 2021 arrest and detention in this case, DeBerardinis has repeatedly sought release, telling the Court that he needs to assist his mother, Shirley DeBerardinis, because

she has health issues. *See, e.g.*, ECF Nos. 17-1[3], 33, 44, 102, 124. The defendant now argues that his mother's health conditions and reliance upon other members of her family and support network warrant a reduction in his sentence. ECF No. 191. The defendant should have considered his mother when he chose to commit violent hate crimes. Every Court that has reviewed the defendant's numerous requests for release has declined to release him, despite being made aware of his mother's health conditions and needs. See ECF Nos. 31, 45, 51, 72, 111. The compassionate release statute offers the defendant no additional assistance in his effort to find a way to return to the community prior to completing his sentence. Without diminishing the significant and unfortunate nature of Shirley DeBerardinis's health conditions, the defendant's circumstances simply do not rise to the level of extraordinary and compelling under the applicable law and thus do not warrant releasing this defendant from prison early.

The Sentencing Commission outlined four circumstances where "extraordinary and compelling reasons" related to familial circumstances could support a sentence reduction. U.S.S.G. § 1B1.13(b)(3). Based on the defendant's Motion, only one of those provisions appears to be relevant and applicable: "Extraordinary and compelling" circumstances may be identified upon "the incapacitation of the defendant's parent when the defendant is the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added).

At least one Court in this District has held that because the Sentencing Commission does not define "incapacitation" for purposes of the Sentencing Commission's Guideline for compassionate release, the state law definition of "[i]ncapacitated person" used in the guardianship context should apply. *See United States v. Taveras*, 731 F. Supp. 3d 94, 98-100 (D. Mass. 2024)

---

[3]     The body of the doctor's November 5, 2021 letter in ECF No. 17-1 (describing Shirley DeBerardinis's health conditions), appears to be exactly the same as the body of the April 17, 2025 letter in ECF No. 191-1 that was submitted along with the defendant's instant Motion.

(holding that utilizing the Uniform Probate Code, which was adopted by Massachusetts, to define "incapacitation" in a compassionate release context is compatible with the strict requirements for "extraordinary and compelling circumstances" required for compassionate release). Under the Uniform Probate Code (UPC), an individual is considered "incapacitated" when that individual, "for reasons other than being a minor, is unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health safety, or self-care, even with the appropriate technological assistance." UPC Section 5-102(4) (1969, revised 2019); *see also Taveras* at 98-100.

While the government acknowledges the seriousness of Shirley DeBerardinis's medical conditions, she is not "incapacitated" for purposes of a compassionate release analysis. Applying the UPC standard, filings in this case show that Shirley DeBerardinis is able to "receive and evaluate information or communicate decisions," (*see* UPC Section 5-102(4) (1969, revised 2019)), and the defendant's Motion does not indicate otherwise. Indeed, Shirley DeBerardinis has written letters to this Court on behalf of the defendant on multiple occasions, including a letter that she most recently wrote on January 5, 2026 the defendant attached to his Motion. ECF Nos. 102-1, 177, 191-1. Shirley DeBerardinis's letters are handwritten in beautiful penmanship and signed in her full name. *Id*. The content of the letters demonstrates that Shirley DeBerardinis has received and analyzed information about her son's case and is able to engage in written advocacy on his behalf to the Court. *Id*. Her letters alone show that she is able to receive and evaluate information and communicate decisions, and this she is not incapacitated.

Further, even if this Court did hold that Shirley DeBerardinis's medical conditions rendered her "incapacitated" for purposes of the compassionate release standard, DeBerardinis is not her only available caretaker. DeBerardinis's Motion describes at least two other individuals who are

assisting Shirley DeBerardinis, specifically her daughter Dawn DeBerardinis and a longtime family friend, Lisa Peabody. ECF Nos. 191, 191-1 at 10, 191-1 at 11. Even if Shirley DeBerardinis's family and friends are substantially inconvenienced by assisting her, there are other caregiver resources in Massachusetts for which Shirley DeBerardinis may qualify. *See e.g.,* https://www.mass.gov/info-details/home-care-program. The defendant is not her only option. "A defendant's mere desire to care for a vulnerable family member does not qualify as an extraordinary and compelling family circumstance when the defendant is not the only available caretaker." *United States v. Taveras*, 731 F. Supp. 3d 94, 100 (D. Mass. 2024) (holding that defendant was not the only available caretaker for his mother and denying compassionate release). *See also United States v. Mackenzie*, 458 F. Supp. 3d 53, 55 (D. Mass. 2020) (holding that there was no indication that the defendant was the only available caretaker for his grandson, thus, the defendant's desire to care for his grandson does not qualify as an extraordinary and compelling family circumstance).

Shirley DeBerardinis and her support network may be disadvantaged by DeBerardinis's incarceration and inability to assist with her care and support, but that is not sufficient to meet the standard for DeBerardinis's early release. Shirley DeBerardinis is not incapacitated and the defendant is not her only available caretaker, and thus the defendant's circumstances do not meet the extraordinary and compelling requirement for his compassionate release under U.S.S.G. § 1B1.13(b)(3)(C).

    B. <u>Defendant's Efforts Toward Rehabilitation Do Not Warrant a Sentence Reduction.</u>

DeBerardinis argues that his efforts toward rehabilitation and productivity during his incarceration also support his early release. ECF No. 191. Without diminishing the time and dedication that DeBerardinis has invested into the programs in which he has earned certificates, these efforts do not bring his arguments up to a level that is extraordinary and compelling.

"[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." USSG § 1B1.13(d); see also 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for modifying an imposed sentence.). Even combined with his mother's health needs, these rehabilitative efforts do not offer a basis to release this defendant prior to the completion of his sentence.

### III.    The Defendant Remains a Danger to the Community.

The defendant has been in federal custody since his arrest on September 29, 2021. Since that time, he has repeatedly and unsuccessfully sought his release – from Magistrate Judge Bowler, from this Court, and from the First Circuit. One of defendant's primary reasons in his many filings seeking release from custody over the past five years has been to care for his mother. But each Court that has reviewed a request to release DeBerardinis has declined to do so, finding that the defendant is dangerous. *See* ECF Nos. 31, 45, 51, 72, 111.

DeBerardinis remains a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g). Magistrate Judge Bowler held a total of four detention hearings for DeBerardinis (see ECF Nos. 13, 25, 31, 111). Prior to these hearings, the defendant submitted briefs and letters of support that included information regarding his mother's health condition. *See, e.g.*, ECF Nos. 17, 17-1, 17-2, 44, 102. Each time, Magistrate Judge Bowler ordered the defendant detained, finding that defendant is a danger to the community, there as a substantial risk he will obstruct justice, and he was unlikely to comply with the Court's orders. *See* ECF Nos. 31, 45, 111. DeBerardinis appealed one of the Magistrate Judge's decisions to this Court on December 31, 2021. ECF No. 32. After conducting a hearing and considering the evidence, on February 17, 2022, this Court affirmed Magistrate Judge Bowler and denied the defendant's motion to revoke his order of detention. ECF No. 51. DeBerardinis then filed an appeal of his pretrial detention to the First

11

Circuit Court of Appeals. The First Circuit denied his appeal on June 3, 2022 (Case No. 22-1123), affirming this Court's detention order. *See* ECF No. 72. DeBerardinis then filed another motion on February 26, 2023 again asking the Court to reconsider releasing him pretrial. ECF No. 102. In that filing, he attached some of Shirley DeBerardinis' medical records. ECF No. 102-6. Again, Magistrate Judge Bowler denied DeBerardinis' request for release because she found, among other things, that he is dangerous. ECF No. 111.

As this Court stated during the defendant's sentencing hearing, "I appreciate the fact that his family wants him home. These things are often much harder on the family than they are on the defendant, and I will say that almost every single family of every single defendant wants them home, and I understand that, but the family has been unable to control him in the past or keep him compliant with his medication, and I don't see any reason or see anything that's changed to warrant a different outcome on that." ECF No. 175 at 26:9-17.

The defendant now stands guilty of hate crimes and obstruction, adding more convictions to his already-very-lengthy record. The last five years that he has been incarcerated is the longest period in his adult life that he has not been arrested or convicted. As set forth above, his criminal history includes a number of violent crimes as well as restraining orders and violations of those orders. As multiple courts have repeatedly found, this defendant is a danger to the community and his mother's unfortunate circumstances do not alter that conclusion. His sentence cannot and should not be reduced.

## IV.    The Section 3553(a) Factors Do Not Warrant a Reduction.

The balance of the section 3553(a) factors, coupled with the defendant's criminal history, also support a denial of the defendant's Motion. *See* 18 U.S.C. § 3553(a). Indeed, "a district court's decision to deny compassionate release may be affirmed solely on the basis of its supportable

determination that the section 3553(a) factors weigh against the granting of such relief." *United States v. Texeira-Nieves*, 23 F.4th 48, 55 (1st Cir. 2022) (collecting cases). "In other words, a supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent reason to deny compassionate release." *Id*. The balance of the section 3553(a) factors is the same today that it was when the Court sentenced the defendant to 90 months in prison on June 10, 2024, and therefore his sentence should not be altered.

This Court carefully considered the section 3553(a) factors when imposing DeBerardinis's 90-month sentence. During the sentencing hearing, this Court stated, "There's nothing in those [section 3553(a)] factors that warrant a downward departure or variance from the guidelines in this case… the conduct that he undertook was squarely in the heartland of those guidelines. I could in this case go above the guidelines. That would take into account the weapons that were found in his house and the threats made to the journalist. I'm not going to do that…" ECF No. 175 at 26:18-27:2. In his Motion, the defendant expresses remorse for his crimes, but he did the same at the sentencing hearing (*see* ECF No. 175 at 25:18-20) and the Court considered that when it imposed the sentence. The defendant's mother's health conditions appear to be the same now that they were at sentencing (*compare* ECF No. 17-1 *with* ECF No. 191-1). The analysis of the section 3553(a) factors remain the same that they were at the sentencing hearing, and strongly support leaving the original 90-month sentence undisturbed.

Further, when imposing DeBerardinis's sentence, this Court stated that it gave a lot of weight to general deterrence, specifically the "need to deter racism and threats and violence on the parts of others in our community." ECF No. 175 at 27:18-21. What kind of message would a reduction of DeBerardinis's sentence send to the community? Reducing this defendant's sentence would signal to the public that racialized threats of violence is not a serious crime worth holding

offenders accountable for. It would signal to the public that victims of race-based hate crime are not priorities, and that their injuries are unimportant in the eyes of the law. This Court should instead deny defendant's Motion, affirming its prior loud and clear message that race-based violence is inexcusable, despicable behavior that is unwelcome in our community and deserving of punishment that reflects the severe harm that it causes.

## CONCLUSION

After committing violent and harmful crimes, DeBerardinis has asked this Court to reduce his sentence and release him back into the community. But DeBerardinis failed to exhaust his administrative remedies and cannot provide this Court with extraordinary and compelling reasons warranting his release. In addition, he is dangerous and a balance of the section 3553(a) factors dictate a denial of his request for release. DeBerardinis must meet all four of the above requirements to get out of prison early, but he has not met a single one of them. The Court should deny DeBerardinis's Motion for Compassionate Release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

/s/ Torey B. Cummings
Torey B. Cummings
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify this 6th of July 2026 that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and a copy will be mailed via Federal Express to the defendant, given that he filed the Motion *pro se*.

/s/ Torey B. Cummings
Torey B. Cummings
Assistant United States Attorney

14